1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
:
AB DISCOUNT DEPOT LLC, ET      :  19-CV-02818(CBA)
AL.,                           :
:
    Plaintiffs,                :
:  United States Courthouse
:  Brooklyn, New York
-against-                      :
:
:  September 11, 2019
:  2:00 p.m.
UNITED STATES CITIZENSHIP      :
AND IMMIGRATION SERVICES,      :
:
    Defendant.
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR PRE MOTION CONFERENCE
BEFORE THE HONORABLE CAROL B. AMON
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs:  ELIZABETH DAVID-DEMBROWSKY
                     205 East 89th Street, 2-A
                     New York, New York 10128

                 BY: ELIZABETH DAVID-DEMBROWSKY, ESQ.

For the Defendant:   U.S. DEPARTMENT OF JUSTICE
                     UNITED STATES ATTORNEYS OFFICE
                     271-A Cadman Plaza East
                     Brooklyn, New York 11201

                 BY: SHELDON SMITH, ESQ.

Court Reporter:      DENISE PARISI, RPR, CRR
                     Official Court Reporter
                     Telephone: (718) 613-2605
                     E-mail:  DeniseParisi72@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

Proceedings                                                                          2

1           (In open court.)
2           THE COURTROOM DEPUTY:  Case number 19-CV-2818, AB Discount Depot v. USCIS on for a pre-motion conference.
3           THE COURT:  Do the parties want to state their appearances, please, first for the plaintiff?
4           MS. DAVID-DEMBROWSKY:  Yes.  Good afternoon, Your Honor.  Elizabeth David-Dembrowsky, attorney appearing for Michael E. Piston on behalf of plaintiff.
5           THE COURT:  Okay.
6           MR. SMITH:  Good morning, Your Honor.  Sheldon Smith, Special Assistant United States Attorney on behalf of defendant.  I'm also here with an intern from my office, Ms. Monica Mercola.
7           THE COURT:  All right.  Good afternoon.  You all can be seated.

So I take it that what we want here is cross-motions for summary judgment?

           MR. SMITH:  Yes, Your Honor.
           THE COURT:  Is there no room for any resolution of this short of motion practice?  Has that all been explored?
           MR. SMITH:  It has been explored, Your Honor.  I mean, I'm gladly willing to go back to the agency for further discussion; however, as you can see, this is the second time this case has been before Your Honor; the agency has denied this case.  I would be glad to go back to the agency, Your

Honor, to further explore potential resolution. As you can see, this case was before Your Honor last year in August, it was a stipulated dismissal where the parties agreed that USCIS would reopen the I-140 re-adjudication to -- reopen the I-140 petition to re-adjudicate on one issue and the agency did that and re-denied the petition and plaintiffs then re-filed this action before Your Honor. So I'm not saying a resolution is impossible; however, it seems, based on the procedural history of this case, it may be unlikely.

THE COURT: Have you talked to them about it since the filing of the new case?

MR. SMITH: Yes, Your Honor.

THE COURT: And they weren't receptive to doing it?

MR. SMITH: That's correct, Your Honor.

THE COURT: Does the plaintiff agree that the standard that they have to meet is showing that the action of the agency was arbitrary, capricious, and abusive discretion?

MS. DAVID-DEMBROWSKY: Yes, Your Honor.

THE COURT: That's a pretty tough standard to meet. How do you think you are going to meet that?

MS. DAVID-DEMBROWSKY: So, Your Honor, it appears that there's only one issue that is occurring and it has to do with the definition of, in part, "primary," which "primary" -- according to the *Board of Governor of the Fed vs. Agnew*, 329 U.S. 441, "primary" means more than half, and it looks like

1  even if we were to accept on its face, which we are not
2  willing to do, the fact that no evidence was presented to
3  support their contention that 40 percent of the client's time
4  may not have been spent in managerial, which we actually argue
5  is not the case, but even if we were to accept that, that
6  still wouldn't meet the burden.
7      THE COURT:  Because you don't have to show that?
8      MS. DAVID-DEMBROWSKY:  Well, "primary" means more
9  than half, and if all they could potentially argue and be
10 successful in arguing, which, again, we don't contend is the
11 case, that that would still only be 40 percent, so we would
12 consider that math, in a sense, or lack of math, to be
13 arbitrary and capricious.
14     THE COURT:  Just tell me how the term "primary" fits
15 into the analysis.
16     MS. DAVID-DEMBROWSKY:  Your Honor, the argument that
17 was attempted to be made was that it was a conclusion that our
18 client, Mr. Mansha, was not, quote/unquote, "primarily acting
19 in managerial capacity," and part of their --
20     THE COURT:  And you say "primarily" is defined
21 somewhere as what?
22     MS. DAVID-DEMBROWSKY:  More than half.
23     THE COURT:  So more than half of his time has to be
24 spent as a manager.
25     MS. DAVID-DEMBROWSKY:  Which it is.

1  THE COURT: Did they find that below? I thought
2 they found --
3  MS. DAVID-DEMBROWSKY: They found that only
4 25 percent -- they were only arguing that 25 percent of his
5 time related to employee management, and they also argued an
6 additional 15 percent -- socializing -- shouldn't be counted,
7 but even if we were to agree, which we do not, that the
8 25 percent and the additional 15 percent -- that only equals
9 40, which then would still not be an argument that would be
10 successful about the rest of his time, which they haven't
11 argued about, it would not still be primarily in managerial
12 duties.
13  THE COURT: So their statistic of 40 percent
14 pertains to non-managerial work?
15  MS. DAVID-DEMBROWSKY: Correct, Your Honor.
16  THE COURT: Oh, I thought it was the other way
17 around.
18  MR. SMITH: Your Honor, if I may?
19  THE COURT: Yes.
20  MR. SMITH: Your Honor, the decisions -- so first
21 I'll say that the plaintiffs' argument that even if the agency
22 has identified and labeled 40 percent of the duties to be
23 non-managerial, that the remaining 60 percent is managerial,
24 and that's a fluid argument because the agency does not
25 concede anywhere in the decision that the duties that it does

1   not explicitly state are non-managerial are managerial.  It
2   just -- it gives an example of certain duties that it found
3   and assessed; in particular, the 25 percent of time that the
4   employee or the beneficiary spend in employee management and
5   the 15 percent spent socializing.  The discussion and the
6   agency's decision is that the 25 percent of the time spent in
7   employee management is disproportionate to the size and
8   complexity of the company which is a consideration the agency
9   can make based on the regulations and the case law; and
10  essentially what the agency is saying is that if Mr. Mansha is
11  spending 25 percent of his time doing things like interviewing
12  and hiring, performance review for the primary employee
13  records, that seems to be a large amount of time for someone
14  to be spending his time doing for such a small company that's
15  not particularly complex.
16          And so the agency is acknowledging that there may be
17  some managerial duties there, but it definitely does not
18  comprise the majority of the primary --
19          THE COURT:  But are you defining managerial duties
20  based on the size of the company?
21          MR. SMITH:  It's not -- it's the factor, Your Honor,
22  and the statute does authorize that.  If you look at 8 CFR
23  204.5(j)(4)(ii), which authorizes the agency to use the size
24  of a company as a factor to consider the reasonable needs of
25  the organization in the overall purpose and stage of

1  development of the organization, so you look at the size of
2  the company and how it operates and determine whether a
3  manager, as defined by the statute, is necessary for that
4  company. So size by itself, as the regulations also state, is
5  not -- is not something the agency should conclude as being
6  dispositive but is a factor when deciding whether the employee
7  or the perspective employee will be performing managerial
8  duties.
9          THE COURT: So I take it under the code of federal
10 regulations you have indicated or made a pitch that Mansha,
11 more than 50 percent of his time, engaged in managerial
12 duties, correct?
13         MS. DAVID-DEMBROWSKY: Yes, Your Honor.
14         THE COURT: And what were those duties that you --
15         MS. DAVID-DEMBROWSKY: I don't -- I don't have a lot
16 of information about that to share, but I do know that's part
17 of what we contend, and I do know that on the information that
18 we do have in terms of the reason for rejection, the only two
19 asserted reasons were the ones that we were speaking about
20 previously, which are the argument about the employment
21 management work and then the argument about the other
22 estimated 15 percent time in socializing both with customers
23 and the employees.
24         MR. SMITH: Again, Your Honor, those two reasons
25 were offered as part of the totality of the record analysis,

Proceedings                                                                 8

1   so it wasn't that the agency only considered those two sets of
2   duties, the agency considered those two sets of duties in
3   light of the employer's entire operation.
4              MS. DAVID-DEMBROWSKY:  If there were other
5   considerations that they had, they weren't then shared.  The
6   only two reasons that we have are those that were asserted.
7              MR. SMITH:  Your Honor, all the reasons that the
8   agency relied on are in the agency's decision and are also in
9   the administrative record that was filed with the Court on
10  Monday.
11             THE COURT:  The company has other individuals, it
12  says, are managers as well?
13             MR. SMITH:  Yes, Your Honor.  So per the
14  organizational chart filed with the I-140 petition, Your
15  Honor, they claim they have their three managers -- a general
16  manager, a store manager, and a marketing manager -- that
17  Mr. Mansha, the beneficiary, supervises.
18             THE COURT:  So he is a manager over those managers?
19             MR. SMITH:  Correct.  So -- and one of the
20  requirements -- purportedly, one of the requirements in the
21  regulations that if you are a first-line supervisor, cannot be
22  a managerial -- cannot be acting in a managerial capacity for
23  purposes of this statute and regulations.  You must be a
24  supervisor of other supervisors, in essence, so that's the --
25  that's the argument that plaintiff is making is that

1   Mr. Mansha is supervising other professional employees, other
2   managers, and the Government's response to that is, even if he
3   is doing that, it's not comprising the majority of his time.
4   He's still involved in the day-to-day operations of the
5   company.
6              THE COURT:  But are you saying that if he's
7   supervising other managers, that's not managing under the
8   statute?
9              MR. SMITH:  No.  I'm saying it is managing, Your
10  Honor, it's just not what his primary duties are, and his
11  duties -- his managerial duties need to be his primary
12  responsibility, which it's not, per the record.
13             THE COURT:  Did you go through the appellate process
14  on this?  The petitioner may appeal to the administrative
15  appeals office.  Was that done here?
16             MR. SMITH:  My understanding, Your Honor, is that it
17  was not appealed to the AAO, but it's also an option that the
18  petitioner -- plaintiff has.  It's not a requirement.  My
19  understanding is that this was not -- this decision came from
20  the Nebraska Service Center of USCIS; it did not go from the
21  Service Center to the AAO.
22             THE COURT:  But there's no administrative exhaustion
23  requirement?
24             MR. SMITH:  No, Your Honor.
25             THE COURT:  All right, so it's cross-motions for

Proceedings                                                                10

1   summary judgment, correct?
2            MR. SMITH:  Yes, Your Honor.
3            THE COURT:  All right.  Have you thought about a
4   schedule?
5            MR. SMITH:  The parties have agreed on a schedule,
6   Your Honor.  I will read it into the record.  The
7   administrative record has already been served as of this past
8   Monday.
9            On October 4th, defendant will serve its motion to
10  dismiss, or, in the alternative, its motion for summary
11  judgment.
12           On November 1st, plaintiffs will serve their
13  opposition to defendant's motion to dismiss or for summary
14  judgment and their cross-motion for summary judgment.
15           On November 22nd, defendant will serve its reply in
16  support of its motion, and plaintiffs -- the defendant will
17  serve its reply in support of its motion to dismiss the
18  cross-motion for summary judgment and its opposition to
19  plaintiffs' cross-motion for summary judgment, excuse me.
20           And on December 6th, the plaintiffs will serve their
21  reply in support of their cross-motion for summary judgment
22  and each party will file their respective papers with the
23  Court per Your Honor's rules.
24           THE COURT:  Okay.  So the briefing you anticipate to
25  be finished by December 6th, correct?

1     MR. SMITH:  Yes, Your Honor.
2     THE COURT:  All right.  I will set this down for
3  argument on December 19th at two o'clock.
4     MR. SMITH:  That works for me, Your Honor.
5     MS. DAVID-DEMBROWSKY:  Yes.
6     THE COURT:  All right.  I'll see you then.
7     MS. DAVID-DEMBROWSKY:  Thank you.
8     MR. SMITH:  Thank you.
9     (Matter concluded.)
10
11                   *    *    *    *    *
12
13  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
14
15     /s/ Denise Parisi                September 13, 2019
    _____      _____
16       DENISE PARISI                          DATE
17
18
19
20
21
22
23
24
25

*Denise Parisi, RPR, CRR*
*Official Court Reporter*