UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
AB DISCOUNT DEPOT LLC and AHMED
MANSHA,

                Plaintiffs,         NOT FOR PUBLICATION
                                            **MEMORANDUM & ORDER**
   -against-                         19-CV-02818 (CBA) (RER)

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendant.
------------------------------------------------------x

**AMON, United States District Judge:**

        Plaintiffs AB Discount Depot, LLC ("Discount Depot") and Ahmed Mansha ("Mansha," collectively "Plaintiffs") filed this action on May 13, 2019. Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., of Defendant U.S. Citizenship and Immigration Services' ("USCIS" or "Defendant") March 6, 2019 decision denying Plaintiffs' Form I-140 Petition for Alien Worker ("I-140 Petition"). Defendants have moved to dismiss or alternatively for summary judgment, and Plaintiffs have cross moved for summary judgment. For the reasons stated below, Defendant's motion is GRANTED and Plaintiffs' motion is DENIED.

## BACKGROUND

        On July 14, 2016, Discount Depot filed the I-140 Petition with USCIS on Mansha's behalf, seeking to qualify him as a multinational manager in his capacity as President of Discount Depot. (ECF Docket Entry ("D.E.") ## 9–12, Certified Administrative Record ("CAR") at 1387.)[1] Plaintiffs' application provided that Mansha is a native and citizen of Pakistan, living in the United States as an E-1 nonimmigrant treaty-trader. (Id. at 1388.) Before coming to the United States,

---

[1] As explained herein, I "may consider the administrative record and public documents without converting the motion into a motion for summary judgment." Bates v. Donley, 935 F. Supp. 2d 14, 17 (D.D.C. 2013).

1

Mansha was a Senior Partner of Shami Textiles in Pakistan, a company of which he owns 50%. (Id. at 1394, 1407.) Mansha is the majority owner of Discount Depot, a 99 Cents Store retailer of low-cost products. (Id. at 1395.) Non-party Muhammad Baig, Discount Depot's General Manager, owns 49% of Discount Depot. (Id. at 1404, 1621.) Discount Depot has a wholly owned marketing subsidiary called Mansha, Inc., (see, e.g., id. at 1404), and the two companies "will work closely with Shami Textiles to expand its highly successful clothing products to the American consumer," (id. at 1395). An organizational chart shows Mansha as the "Director" of Discount Depot. (Id. at 1621.) The chart indicates that Mansha has three direct reports: Baig, the General Manager; Beenish Tahir Quereshi, the Store Manager; and Mazaher Shah, the Marketing Manager. (Id.) Beneath Baig and Quereshi are five employees, two of whom appear to be shared direct reports, and beneath Shah are three additional employees.[2] (Id.)

On February 7, 2018, USCIS denied Plaintiffs' I-140 Petition on three grounds, including that Plaintiffs had not established that "the offered role with [Discount Depot] is in a qualifying role." (Id. at 207.) On March 9, 2018, Discount Depot filed a motion to reopen, challenging each ground of denial in USCIS's February 7, 2018 decision. (Id. at 182–202.) On April 19, 2018, USCIS granted the motion to reopen and again denied the I-140 Petition, on the same three grounds as the original decision. (Id. at 179–181.) Plaintiffs filed an action in this Court challenging USCIS's April 19, 2018 decision on August 2, 2018. See AB Discount Depot LLC, et al. v. USCIS, No. 18-CV-04383 (CBA). On October 17, 2018, the parties filed a stipulation and order of dismissal, by which they agreed that USCIS would re-adjudicate Plaintiffs' I-140 Petition on the sole question of whether Mansha's position as President of Discount Depot is a qualifying managerial position. Id. (D.E. # 13).

---

[2] Other documents in Plaintiffs' application indicate that Shah works for Mansha, Inc., Discount Depot's marketing subsidiary. (See, e.g., CAR at 1397, 1653.)

USCIS reopened the case and on October 25, 2018, issued a new request for evidence, (CAR at 171, 177), which Plaintiffs responded to on January 22, 2019, (id. at 21–170). On March 6, 2019, USCIS again denied Plaintiffs' I-140 Petition, finding that "[a] review of the totality of the record, including [Mansha's] description of his position, the organizational chart, and other documentation regarding the operation of [Discount Depot] and its US subsidiary, does not demonstrate that [Mansha] would be primarily acting in a managerial capacity." (Id. at 1–10.)

On May 13, 2019, Plaintiffs filed the instant action, seeking review under the APA of Defendant's March 6, 2019 decision. (D.E. # 1 ("Compl.").) USCIS now moves to dismiss, or, in the alternative for summary judgment. (D.E. # 18 ("Def. Br.").) Plaintiffs oppose USCIS's motion and cross move for summary judgment. (D.E. # 19-2 ("Pl. Br.").)

## STANDARDS OF REVIEW

Cases involving review of agency decisions pursuant to the APA "present only a question of law." Sikh Cultural Soc'y, Inc. v. U.S. Citizenship & Immigration Servs., No. 15-CV-5158 (RRM), 2017 WL 1232476, at *9 (E.D.N.Y. Mar. 30, 2017). As a result, "the procedural vehicle being utilized to present the question for the court's review is largely academic." Anania v. United States, CV 16-3542 (SJF) (ARL), 2018 WL 388848, at *5 (E.D.N.Y. Jan. 12, 2018). For the reasons explained below, I construe Defendant's motion as a motion to dismiss. Because I dismiss the case, I need not decide Plaintiffs' cross motion for summary judgment. However, because Plaintiffs oppose Defendant's motion and cross move for summary judgment in the same brief, I consider Plaintiffs' arguments in evaluating Defendant's motion to dismiss.

### I.   Motion to Dismiss Standard

On a motion to dismiss, a district court reviewing an agency decision "sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the [agency's]

3

study was factually flawed." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1225 (D.C. Cir. 1993). "[W]hen faced with a motion to dismiss in the APA context, a court may consider the administrative record and public documents without converting the motion into a motion for summary judgment." Bates v. Donley, 935 F. Supp. 2d 14, 17 (D.D.C. 2013) (citations omitted). In other words, "the district court can consult the record to answer the legal question before the court—in this case whether the agency adhered to the standards of decisionmaking required by the APA." Marshall Cnty. Health Care Auth., 988 F.2d at 1226 (footnote omitted). Under what has been referred to as the "Record Rule," "a court reviewing an agency decision is confined to the administrative record compiled by the agency when it made the decision." Ali v. Pompeo, 16-CV-3691-KAM-SJB, 2018 WL 2058152, at *4 (E.D.N.Y. May 2, 2018) (alteration in original) (quoting Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997)).

II.     **APA Standard**

Under the APA, a court can set aside an agency action that its finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); see also, e.g., N.Y. Pub. Interest Research Grp., Inc. v. Johnson, 427 F.3d 172, 179 (2d Cir. 2005). An agency's decision may be deemed arbitrary and capricious when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Karpova v. Snow, 497 F.3d 262, 268 (2d Cir. 2007) (quoting Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Put simply, "[t]he relevant inquiry is whether the agency decision draws a rational connection between the facts found and the choice made." Chen v. Coven, 672 F. App'x 136, 137 (2d Cir.

4

2017) (internal quotation marks omitted). "The court is not empowered to substitute its judgment for that of the agency." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (quoting Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 416 (1971)).

### III.     Qualification as a Multinational Manager

In the first instance, a petitioner has the burden of demonstrating by a preponderance of the evidence that he is eligible for the requested visa. Sikh Cultural Soc'y, Inc., 720 F. App'x at 651 (first citing 8 U.S.C. § 1361; then citing Egan v. Weiss, 119 F.3d 106, 107 (2d Cir. 1997)); Akinsuyi v. Bd. of Immigration Appeals, 17-CV-1462 (PKC), 2018 WL 4017579, at *6 (E.D.N.Y. Aug. 22, 2018) ("In the immigration context, a petitioner or applicant must prove by a preponderance of the evidence that he . . . is eligible for the benefit sought." (internal quotation marks omitted)).  In order to demonstrate eligibility for an I-140 Petition, among other requirements not relevant here, a petitioner must establish that the alien's duties in the United States will be primarily executive or managerial.[3]  See 8 U.S.C. § 1101(a)(44)(A), (C); 8 C.F.R. § 204.5(j)(2); see also Saga Overseas, LLC v. Johnson, 200 F. Supp. 3d 1341, 1348 (S.D. Fla. 2016) ("By requiring that the duties be primarily managerial or executive, the express language of the regulations excludes workers whose job involves a mix of management and non-management responsibilities." (citation omitted)).  The petitioner must submit a written job offer that clearly describes the specific duties contemplated by the proposed managerial position. 8 C.F.R. § 204.5(j)(5). The statute provides the following list of managerial tasks:

(i)     manag[ing] the organization, or a department, subdivision, function, or component of the organization;
(ii)    supervis[ing] and control[ling] the work of other supervisory, professional, or managerial employees, or manag[ing] an essential function within the organization, or a department or subdivision of the organization;

---

[3] Here, because Plaintiffs assert that Mansha was a manager, USCIS analyzed the record to determine whether Mansha was acting in a managerial—as opposed to an executive—role.  (CAR at 2–3.)

5

(iii) if another employee or other employees are directly supervised, ha[ving] the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, function[ing] at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv) exercis[ing] discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A); see also 8 C.F.R. § 204.5(j)(2).

## DISCUSSION

### I. Summary of USCIS's March 6, 2019 Decision

Here, USCIS found that Plaintiffs had not met their burden to show by a preponderance of the evidence that Mansha's role at Discount Depot would be primarily managerial. Included in that assessment was a consideration of Mansha's role in Discount Depot's wholly owned subsidiary, Mansha, Inc. USCIS reached its decision based on the size and complexity of Discount Depot, the fact that several of Mansha's proposed tasks appeared to be operational (as opposed to managerial) in nature, and contradictions and deficiencies in Plaintiffs' submissions that made it difficult for USCIS to discern what Mansha's role would actually entail.

Among other findings, USCIS found that Mansha's spending 25% of his time on employee management would be "a disproportionate amount of time in employee management relative to the size and complexity of [Discount Depot] and Mansha, Inc." (CAR at 5.) The agency similarly expressed skepticism about Mansha spending 15% of his time "socializing," noting both the vagueness of the term "socializing" and the lack of explanation from Plaintiffs as to how socializing is managerial. (Id. at 5–6.) USCIS also found that several of Mansha's daily tasks—namely, checking receipts and cash, analyzing sales, and checking bank accounts—were operational rather than managerial. (Id. at 8.)

6

As to the inconsistencies and deficiencies in Plaintiffs' submissions, USCIS found that "many of [Mansha's] duties from [earlier submissions], including employee management (hiring, firing, performance review, etc.) and many interactions with suppliers (reviewing supplier lists for new products, reviewing supplier performance, obtaining bids, negotiating, etc.)" were not listed in the description of Mansha's typical day outlined in a later submission. (Id. at 7–8.) USCIS also noted that Plaintiffs' description of Mansha's typical day suggested that Mansha works only 5 to 6 hours per day, and Plaintiffs had previously stated that Mansha would be working "full time." (Id. at 8.) USCIS further found that in several instances, it was unclear which Discount Depot employees were responsible for which tasks, and who reported to whom, "call[ing] into question whether the hierarchy listed on the [organizational] chart is accurate, or whether it was inflated for the purpose of making the organization appear to be more complex than it actually is." (Id.) Lastly, USCIS noted that Plaintiffs failed to provide some of the requested information altogether, including a list of employees at the time of filing and currently, as well as the operating hours of Discount Depot and the work schedules for all of its employees at the time of filing. (Id. at 6–7.)

## II. Review of USCIS's March 6, 2019 Decision

Plaintiffs challenge USCIS's March 6, 2019 decision, claiming it was arbitrary and capricious and not supported by substantial evidence. I address Plaintiffs' specific arguments in turn.

### A. Consideration of Discount Depot's Size and Complexity

Plaintiffs allege that "there is no evidence in the record to support the agency's claim that 25% is a disproportionate amount of time in employee management relative to the size and complexity of [Discount Depot] and Mansha, Inc." (Compl. ¶ 31; see also Pl. Br. at 23 (same).) However, as Defendant argues, (Def. Br. at 13–16), and the case law supports, "USCIS may

7

properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager," Family Inc. v. U.S. Citizenship & Immigration Servs., 469 F.3d 1313, 1316 (9th Cir. 2006) (citations omitted).  In the March 6, 2019 decision, USCIS acknowledged that "the size of the organization is not, in itself, determinative regarding the beneficiary's eligibility," but found that "[t]he preponderance of the evidence provided does not suggest that the reasonable needs of the organization would support the beneficiary in a primarily managerial level position."  (CAR at 9.)  The decision notes that Plaintiffs represented that Discount Depot had only 11—or potentially 10—employees, including employees of Mansha, Inc. (Id. at 5.)  Tax records from the time of filing, however, show only 3 employees on Discount Depot's payroll, rather than the 7 claimed.  (Id. at 9); cf. Family Inc., 469 F.3d at 1316 ("However, the facts in the record do not compel the conclusion that [the beneficiary] was primarily engaged in managerial duties, as opposed to ordinary operational activities alongside Family's five other employees.").  As such, I find that USCIS properly considered the size and complexity of Discount Depot in reaching its decision.  I also find reasonable USCIS's conclusions that (1) Discount Depot's small size weighed against finding that Mansha was a manager, and (2) as reflected in Plaintiffs' submissions, Discount Depot could not support Mansha in a primarily managerial position.

Moreover, the size and complexity of Discount Depot was only one of several reasons why USCIS found that Mansha would likely be involved in the operations of the business, rather than acting in a primarily managerial role.  As described above, USCIS also found that several of Mansha's tasks were operational rather than managerial in nature and that there were discrepancies and holes in the record that made it difficult to discern the true nature of Mansha's proposed role at Discount Depot.  Therefore, because the size of the company is a permissible consideration, and

8

because it was not USCIS's only reason for finding that Plaintiffs had not carried their burden in showing that Mansha's role was qualifying, this aspect of agency's decision was not unreasonable.

### B. Interpretation of the "Socializing" Component of Mansha's Proposed Role

Plaintiffs describe USCIS's finding that "socializing" is not a managerial duty as "totally unsubstantiated or even explained." (Compl. ¶ 33.) They argue that socializing is, in fact, a managerial duty because, among other reasons, "[t]here is perhaps no other part of management that has [as] great an influence on reducing burnout as successfully socializing new employees to the values of the organization." (Pl. Br. at 22–23.) Defendant argues that "[n]ot only can it not be determined what exactly Discount Depot means by 'socializing,' it seems like something any employee could be doing and not a task that calls for a multinational manager." (Def. Br. at 21.) I find Defendant's conclusion reasonable in context and do not find persuasive Plaintiffs' arguments to the contrary, in support of which they cite what appears to be a textbook for nursing students, entitled "Leadership roles and management functions in nursing: theory and application," (Pl. Br. at 23). Cf. Tianhai Elec. N. Am., Inc. v. Johnson, No. 14-CV-10016, 2015 WL 12731911, at *4 (E.D. Mich. Dec. 8, 2015) ("But the Court does not know what it means to be a 'key player' or 'heavily involved' in a business acquisition. The terms are open to many interpretations."); Khamisani v. Holder, Civil Action No. H–10–0728, 2011 WL 1232906, at *7 (S.D. Tex. Mar. 31, 2011) ("General descriptions are inadequate to satisfy the implementing regulations because, as one court has observed, '[t]he actual duties themselves reveal the true nature of the employment.'" (quoting Fedin Bros. Co. v. Sava, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989))).

### C. Mansha's Remaining Job Responsibilities

Plaintiffs argue that, even accepting USCIS's conclusion that certain of Mansha's responsibilities are non-managerial, USCIS nevertheless conceded that the majority of Mansha's

9

time was spent on managerial tasks. (Compl. ¶¶ 33, 34; Pl. Br. at 23–24.) More specifically, Plaintiffs assume that USCIS found the following tasks non-managerial: employee management (25%), socializing (15%), checking bank accounts (15 minutes out of 5 to 6 hour day), and discussing sales and checking cash and receipts (15 minutes out of 5 to 6 hour day). (Pl. Br. at 23 n.4.) Assuming an average work day of 5.5 hours, Plaintiffs calculate 49.1% of Mansha's time dedicated to those non-managerial tasks. (Id.) Plaintiffs conclude that by pointing to specific job responsibilities as non-managerial, USCIS has conceded that the remaining 50.9% of Mansha's time was spent on managerial tasks. (Id. at 23–24.)

Plaintiffs, however, misperceive the underlying decision. USCIS found that Plaintiffs had not met their burden of proof to establish that Mansha qualified for the I-140 visa. In so finding, USCIS pointed not only to specific, substantive flaws in Plaintiffs' descriptions of Mansha's proposed role, but also to inconsistencies in the submissions and entirely missing information. Having found that Plaintiffs did not meet their burden, it was not USCIS's burden to address and refute each claimed managerial task. Cf. Champion World, Inc. v. I.N.S., No. 90–35644, 940 F.2d 1533 (TABLE), 1991 WL 144470, at *1 (9th Cir. 1991) ("[T]he beneficiary must prove that he or she primarily performs [certain high-level responsibilities] and does not spend a majority of his or her time on day-to-day functions." (first emphasis added)).

### D. Plaintiffs' Substantial Evidence Arguments

Plaintiffs argue that "USCIS's misconstrual of Mr. Mansha's supervisory and other duties is not substantial evidence that he will not be employed in a managerial capacity." (Pl. Br. at 26–28.) Specifically, Plaintiffs argue that "it [was] inappropriate for the USCIS to disregard the one supervisor and 3 employees of Mansha Inc. working under Mr. Mansha's supervision and so its conclusion that he was only supervising 3 employees is untrue." (Id. at 27.) To the extent USCIS

10

references 3 employees, the agency was referring to the disconnect between Plaintiffs' claim that Discount Depot had 7 employees, and the fact that the tax documents showed only 3 employees on Discount Depot's payroll.  (See CAR at 9 ("[A] review of the petitioner's Form 941 for the third quarter of 2016, which includes the filing date of July 14, 2016, finds that they paid wages for only 3 employees, not the 7 listed on the organizational chart or the 6 included in the list of subordinate employee descriptions.").)  Moreover, it is incorrect that USCIS disregarded Mansha, Inc. employees; the March 6, 2019 decision repeatedly refers to those employees.  (See, e.g., id. at 5 (counting Mansha, Inc. employees listed in tax documents).)

Plaintiffs also argue that "the fact that there are some differences between the 'daily duties' listed (at the insistence of USCIS) as performed by Mr. Mansha on a typical day, CAR at 33–34, and the overall statement of his general duties provided earlier, CAR at 1322–1324" is not "evidence that Mr. Mansha will not be primarily employed in a managerial capacity."  (Pl. Br. at 28.)  Plaintiffs again misconstrue the point USCIS was making; these discrepancies are simply an example of ways in which Plaintiffs' submissions "ma[de] it difficult to assess the true nature of Mr. Mansha's job and whether his duties would be primarily managerial," (Def. Br. at 17).  USCIS did not abuse its discretion by considering discrepancies in the record in reaching its conclusion that Plaintiffs had not met their burden to establish that Mansha would be acting in a primarily managerial role.  Cf. Systronics Corp. v. I.N.S., 153 F. Supp. 2d 7, 15 (D.D.C. 2001) ("[T]he INS also noted the irregularities with the lease and location of Systronics" and "question[ed] what [the beneficiary's] duties would be in light of the company's small personnel size.").

### E. Plaintiffs' <u>Chenery</u> Arguments

Plaintiffs argue that "most of [USCIS's reasons for denying Plaintiffs' petition, as stated in its briefing] cannot be considered because they assert grounds for denial that do not appear in the [March 6, 2019] Decision, and so are barred by <u>S.E.C. v. Chenery</u>, 318 U.S. 80, 87 (1943) . . . ." (Pl. Br. at 26, 28–32.) Plaintiffs are correct that there is no <u>per se</u> credibility finding in USCIS's decision, and it would be inappropriate for this Court to reach that conclusion. However, in reviewing the overall strength of Plaintiffs' evidentiary presentation in support of Mansha's application, USCIS did note discrepancies between filings, which was not inappropriate in evaluating the application as a whole.

Moreover, a number of the arguments Plaintiffs claim were not in the underlying agency decision in fact were. For example, Plaintiffs argue that USCIS's "speculation regarding the number of days Mr. Mansha works per week" is barred by <u>Chenery</u> because "it played no role in the [agency's] decision." (<u>Id.</u> at 30.) However, the March 6, 2019 decision found that "[Plaintiffs] did not address the organization's normal hours of operation nor provide work schedules, as requested, so the number of days [Mansha] will work is not known. If [Mansha] would be working a normal five day work week, then he would only be working approximately 25–30 hours per week. This would contradict [Plaintiffs'] response in Part 6, Question 4 of the petition, where it was stated that [Mansha] would be working full-time." (CAR at 8.)[4] Plaintiffs also argue that "the decision under review [did not] mention [discrepancies in other Discount Depot employees' job

---

[4] Furthermore, Plaintiffs' suggestion that USCIS's "speculation" itself was impermissible is misguided because an agency is permitted to draw reasonable inferences from the evidence at its disposal. Cf. <u>Tri-V's Homes Inc. v. U.S. Dep't of Homeland Sec.</u>, No. CV 08–06954 RGK(JCx), 2009 WL 10690402, at *1 (C.D. Cal. July 29, 2009), aff'd, 418 F. App'x 615 (9th Cir. 2011) ("Based on the credible evidence <u>and the reasonable inferences drawn from that evidence</u>, the Court finds that Defendants did not abuse their discretion in denying Plaintiffs' application." (emphasis added)). Moreover, here, USCIS was forced to engage in speculation about Mansha's exact schedule because Plaintiffs did not provide Discount Depot's hours of operation, nor the work schedules of its employees, even after USCIS requested that they do so. (CAR at 173.)

12

descriptions]," specifically Ms. Babar's and Mr. Campaore's job descriptions. (Pl. Br. at 31–32.) However, the March 6, 2019 decision refers to Babar and Campaore by their job descriptions, rather than their names—Babar is the "main cashier," and Campaore is the employee in "in charge of overseeing the health, beauty, and household items departments." (<u>Compare</u> CAR at 8, <u>with</u>, <u>id.</u> at 36.) Therefore, Plaintiffs' contention that these discrepancies were not mentioned or considered by the agency is also without merit.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED, and Plaintiffs' cross motion for summary judgment is DENIED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: July 31, 2020
      Brooklyn, New York

                                                        /s/ Carol Bagley Amon
                                                      Carol Bagley Amon
                                                      United States District Judge